**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHYAM NALWADE,

     *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

     *Defendant*.

No. 24-cv-3463 (DLF)

**MEMORANDUM OPINION**

Shyam Nalwade brings this action against the U.S. Department of Homeland Security (DHS). He claims that U.S. Citizenship and Immigration Services (USCIS), a component of DHS, unlawfully revoked his H-1B cap-exempt status after finding that his employer committed fraud during the H-1B visa application process. Before the Court is DHS's Motion to Dismiss. Def.'s Mot., Dkt. 9. For the following reasons, the Court will grant the motion.

## I.    BACKGROUND

### A.    Legal Framework

The Immigration and Nationality Act (INA) allows U.S. employers to petition for foreign workers in certain occupations through the H-1B program. *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c)(1). A statutory cap limits the number of new H-1B visas issued each year. *See id.* § 1184(g). Because the demand for H-1B visas typically exceeds that statutory cap, USCIS annually "conducts a randomized selection process," known as a "lottery." *Y&N Bldg. Supply US v. DHS*, No. 24-cv-03593, 2025 WL 2801940, at *1 (D.D.C. Oct. 1, 2025) (citing 8 C.F.R.

§ 214.2(h)(8)(iii)).  Thus, before an employer can file an H-1B petition, it must first register in the lottery on behalf of each prospective foreign employee.  *See id.*

Employers register for the lottery through USCIS's website.  8 C.F.R. § 214.2(h)(8)(iii)(A)(1).  The "registration must be properly submitted in accordance with 8 CFR 103.2(a)(1), paragraph (h)(8)(iii) of this section, and the form instructions."  *Id.*  As relevant to this case, USCIS's online registration process required petitioners to attest that

> this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is being submitted, have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission.

Mem. in Supp. of Def.'s Mot. to Dismiss 2–3, Dkt. 9-1; *see also* Compl. ¶¶ 69, 88, Dkt. 1; Notice of Intent to Revoke (NOIR) 3, Dkt. 9-4.[1]  The Court will refer to this certification as the "anti-collusion attestation."  The USCIS registration website further stated that

> [i]f USCIS finds that this attestation was not true and correct (for example, that a company worked with another entity to submit multiple registrations for the same beneficiary to unfairly increase chances of selection for that beneficiary), USCIS will find that registration to not be properly submitted.  Since the registration was not properly submitted, the prospective petitioner would not be eligible to file a petition based on that registration in accordance with the regulatory language at 8 CFR 214.2(h)(8)(iii)(A)(1).  USCIS may deny or revoke a petition based on a registration that contained a false attestation and was therefore not properly submitted.

NOIR 3.

If an employer's registration is selected in the lottery, the employer (the "petitioner") files an H-1B petition on behalf of the alien (the "beneficiary").  If the petition is approved, an H-1B

---

[1] In deciding this motion to dismiss, the Court will look beyond the four corners of the complaint and consider the NOIR and the Revocation of Nonimmigrant Petition, Dkt. 9-5, because they are referenced in the complaint and integral to Nalwade's claim.  *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

visa is issued allowing the alien to work in the United States for that employer, and the alien is counted toward that year's H-1B visa cap. In addition, the alien, having "already been counted" once, is not counted toward the annual cap—and thus may avoid the lottery—for future H-1B petitions filed by any new employers during the following six years. *See* 8 U.S.C. § 1184(g)(7). In other words, upon approval of an initial H-1B petition, the alien receives a "cap number" and becomes "cap-exempt" for six years.

Upon notice to the petitioner, USCIS may deny an H-1B petition, 8 C.F.R. § 214.2(h)(10)(ii), or revoke a previously approved petition, *id.* § 214.2(h)(11)(iii). In cases where DHS revokes an H-1B petition due to fraud or misrepresentation, it also revokes the beneficiary's cap-exempt status pursuant to this statutory provision:

> If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of aliens who may be issued visas or otherwise provided such status under the numerical limitations of paragraph (1) in the fiscal year in which the petition is revoked, regardless of the fiscal year in which the petition was approved.

8 U.S.C. § 1184(g)(3).

**B.      Factual and Procedural Background**

Nalwade is a citizen of India residing in the United States. Compl. ¶ 1. In 2022, a company called PRN IT CORP INC (PRN) registered Nalwade in the H-1B visa lottery as a prospective employee. *See id.* ¶ 120. After its registration was selected in the lottery, PRN filed an H-1B petition, and USCIS approved it on August 3, 2022. *See id.* ¶¶ 120–21. Upon approval of PRN's petition and issuance of an H-1B visa, Nalwade was counted against that year's H-1B cap and became cap-exempt under § 1184(g)(7). *See id.* ¶¶ 70, 121, 132, 134.

On February 21, 2023, USCIS sent PRN a Notice of Intent to Revoke the petition on the grounds that PRN "committed fraud or willful misrepresentation by colluding with other companies to increase [Nalwade's] odds of selection in the H-1B lottery." *Id.* ¶¶ 124–26; *see* NOIR 3–4. According to the NOIR, two other companies—closely related to PRN and sharing the same personnel—also submitted registrations for Nalwade in the 2022 H-1B lottery. *See* NOIR 4. During its investigation, USCIS determined that PRN had "colluded with [these] other companies during the registration process to unfairly increase chances of [Nalwade's] selection" and had therefore falsely certified to the anti-collusion attestation. *Id.* at 3–4. The NOIR gave PRN the opportunity "to submit additional information, evidence or arguments to support the petition." *Id.* at 5. PRN responded to the NOIR on May 5, 2023. Compl. ¶ 128. On June 5, 2023, Nalwade's new employer, AXLE IT INC, submitted a petition to transfer his H-1B visa, relying on his cap-exempt status. *See id.* ¶ 123.

On September 20, 2023, USCIS revoked PRN's petition and terminated Nalwade's cap-exempt status. *Id.* ¶¶ 129, 132; *see* Revocation of Nonimmigrant Petition, Dkt. 9-5. In its final revocation letter to PRN, USCIS concluded that PRN had falsely attested to not colluding with other entities to boost Nalwade's chances in the lottery and determined that, given this misrepresentation, the PRN "petition involved fraud." Revocation of Nonimmigrant Petition 5–6. Accordingly, USCIS revoked PRN's petition. *Id.* at 6. The letter also stated that because the revocation was due to fraud, Nalwade would also lose his cap-exempt status pursuant to § 1184(g)(3). *See id.* at 2, 6; Compl. ¶ 132.

Nalwade filed suit claiming that DHS violated the Administrative Procedure Act (APA) when it revoked his cap-exempt status pursuant to § 1184(g)(3). His complaint lists a single count labeled "DHS's Revocation of the Cap Number Exceeds Statutory Authority and is not in

Accordance with Law." Compl. 22. This claim asserts that DHS's revocation of Nalwade's cap-exempt status was based on an erroneous application of § 1184(g)(3) that impermissibly punished a blameless Nalwade for his employer's fraud. *Id.* ¶¶ *78, *81–86.[2] DHS filed a motion to dismiss for lack of standing and failure to state a claim.[3]

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim over which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*,

---

[2] On pages 22 to 24, the complaint's paragraphs (labeled 73–86) are misnumbered and repeat numbers already used. The Court will add an asterisk (*) to paragraph numbers when referring to the paragraphs on pages 22 to 24.

[3] Nalwade includes allegations in his complaint that could give rise to additional claims.

First, in the "Legal Background" section, Nalwade asserts that the anti-collusion attestation is a legislative rule and therefore invalid under the APA because it did not undergo notice and comment rulemaking, *see* Compl. ¶¶ 69, 87, 91–92, and he later asks the Court to enjoin enforcement of the attestation until DHS "has completed notice and comment rulemaking," *id.* at 25. But Nalwade fails to allege any such claim. *See id.* ¶¶ 73–86; *Narambatla v. DHS*, 770 F. Supp. 3d 1264, 1270 n.5 (W.D. Wash. 2025) (noting the same with respect to an underdeveloped notice-and-comment claim Nalwade's attorney alleged in a similar case); *see also* Mem. in Supp. of Def.'s Mot. to Dismiss at 15. And even if Nalwade had asserted such a claim, it would fail because he has not responded to DHS's arguments, *see* Mem. in Supp. of Def.'s Mot. to Dismiss at 15–21; Pl.'s Opp'n 10–19, except in an aside in his opposition's section on standards of review, Pl.'s Opp'n 8–9. Further, this Court and others have rejected any such claim. *See, e.g.*, *Y & N Bldg. Supply US v. DHS*, No. 24-cv-03593, 2025 WL 2801940, at *4–6 (D.D.C. Oct. 1, 2025) (anti-collusion attestation is a valid interpretive rule that did not require notice and comment rulemaking); *LeadIC Design USA v. USCIS*, 766 F. Supp. 3d 946, 954–56 (N.D. Cal. 2025); *Potnuru v. DHS*, No. 23-cv-02423, 2025 WL 691668, at *5–6 (D. Ariz. Mar. 4, 2025); *Manney v. DHS*, 735 F. Supp. 3d 590, 597–99 (E.D. Pa. 2024).

Second, the Court likewise does not construe Nalwade's complaint to allege that USCIS found him "inadmissible" to the United States under 8 U.S.C. § 1182(a)(6)(C)(i). *See* Compl. ¶¶ 6, 130–31; Mem. in Supp. of Def.'s Mot. to Dismiss 21. In any event, a DHS declaration attests that the agency has not found him inadmissible, Decl. of Sharon Orise ¶ 23, Dkt. 9-2, Nalwade has advanced no evidence or argument to the contrary, *see* Pl.'s Opp'n 10–19, and he therefore lacks standing to pursue such a claim.

835 F.2d 902, 906 (D.C. Cir. 1987).  Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, the plaintiff bears the burden of establishing jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (citation modified).  Those factual allegations, however, "receive closer scrutiny than they would in the Rule 12(b)(6) context." *Id.* (citation modified).  Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  If the court determines that it lacks jurisdiction, it must dismiss the claim or action.  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).  But the Court need not accept "a legal conclusion couched as a factual

allegation" or an inference unsupported by the facts alleged in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.    ANALYSIS

#### A.    Standing

DHS contends that the Court must dismiss the case for lack of subject-matter jurisdiction because Nalwade cannot satisfy the causation and redressability requirements of Article III standing. *See* Mem. in Supp. of Def.'s Mot. to Dismiss 8–11.

To establish standing, a plaintiff must show: (1) an "injury in fact"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (1992) (internal quotation marks omitted). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

Nalwade has standing to pursue his claim. He alleges an injury in fact—the loss of his cap-exempt status requiring him to once again roll the dice in the H-1B lottery—that is traceable to DHS's allegedly unlawful conduct. DHS revoked Nalwade's cap-exempt status pursuant to § 1184(g)(3) after determining that Nalwade's employer had committed fraud during the H-1B registration process. Nalwade challenges DHS's application of § 1184(g)(3) as unlawful because, according to him, this provision applies only when the alien himself commits fraud, not when his petitioning employer does so. *See* Pl.'s Opp'n 10, 18–19, Dkt. 10. Thus, "USCIS's revocation of [Nalwade's] cap number satisfies [the traceability] requirement because [Nalwade] contends that the agency's misinterpretation of 8 U.S.C. § 1184(g)(3) is the reason it improperly revoked his cap number." *Sharma v. DHS*, No. 24-7205, 2025 WL 3678429, at *1 (9th Cir. Dec. 18, 2025).

Nalwade's injury is also redressable by a favorable decision.  If the Court agrees with Nalwade that DHS acted beyond its statutory authority when it revoked his cap-exempt status under § 1184(g)(3), it could set aside DHS's unlawful revocation under the APA.  *See* 5 U.S.C. § 706 (providing that courts can "hold unlawful and set aside agency action" that is found to be "not in accordance with law"); *see also Sharma*, 2025 WL 3678429, at *1 (holding that the same injury was redressable under § 706 of the APA).  That remedy would restore his cap-exempt status and therefore redress his injury.

DHS's arguments to the contrary fail to persuade.[4]  DHS contends that Nalwade's injury is not traceable to USCIS but was instead caused by PRN because PRN committed the fraud that eventually led to his injury.  According to DHS, had PRN "not falsely attested to not working with others to unfairly increase [Nalwade's] chances of selection" in the H-1B lottery, "UCSIS would not have revoked the H-1B cap petition approval" and terminated Nalwade's cap-exempt status. Mem. in Supp. of Def.'s Mot. to Dismiss 8; *see id.* at 8–9.  In other words, DHS argues that PRN "started the chain of events leading to . . . the loss of" Nalwade's cap-exempt status, and USCIS simply "followed its statutory and regulatory mandate based on the actions" of PRN.  *Id.* at 9 (citing 8 U.S.C. § 1184(g)(3)).  But this argument assumes that DHS's application of § 1184(g)(3) is valid and uncontested.  If Nalwade's interpretation of § 1184(g)(3) is correct, "USCIS was not statutorily required, or authorized, to revoke his cap number."  *Sharma*, 2025 WL 3678429, at *1. And because "USCIS acted independently of [Nalwade's] first employer when it revoked the cap

---

[4] DHS relies on two district court decisions in support of its arguments.  One has since been reversed, *see Sharma v. DHS*, 755 F. Supp. 3d 1220 (N.D. Cal. 2024), *rev'd and remanded*, No. 24-7205, 2025 WL 3678429 (9th Cir. Dec. 18, 2025), and the other, *Atabekov v. USCIS*, 717 F. Supp. 3d 850 (D. Neb. 2024), has received skepticism from other courts, *see, e.g.*, *Kothapally v. DHS*, No. 24-cv-00741, 2025 WL 2810005, at *4 n.7 (N.D. Ala. Sept. 30, 2025) ("The Court does not find the district court's analysis in *Atabekov* persuasive.").

number under its allegedly erroneous interpretation of § 1184(g)(3)," the loss of his cap-exempt status is traceable to DHS. *Id.*

Turning to redressability, DHS emphasizes that the prayer for relief in Nalwade's complaint asks the Court to "order [DHS] to 'provide notice to [Nalwade] of its intent to revoke his cap H-1B number, and allow him the opportunity to respond' and to 'reinstate [his] cap H-1B number during the pendency of the notice and response period.'" Mem. in Supp. of Def.'s Mot. to Dismiss 10 (quoting Compl. 25).[5] According to DHS, this narrow relief would not necessarily restore Nalwade's cap-exempt status and would therefore not redress his injury. *See id.* at 10–11. But DHS reads the complaint too narrowly. Nalwade also asks the Court "to reverse the agency's decision because it has acted in excess of the authority Congress gave it to revoke assigned cap numbers," Compl. ¶ *86, and to "restore [him] to the position he was in prior to the unlawful determinations of DHS," *id.* at 25. Nalwade confirms that he seeks this broader relief in his opposition. *See* Pl.'s Opp'n 19 (asking the Court to vacate the revocation of his cap-exempt status under the APA). And the Court has already concluded that an order setting aside the § 1184(g)(3) revocation would redress his injury.

Accordingly, Nalwade has standing to pursue his claim, and the Court will turn to DHS's arguments under Rule 12(b)(6).

---

[5] The Court does not construe Nalwade's complaint to assert a separate claim that the revocation of his cap-exempt status was unlawful because he did not receive "notice and an opportunity to respond" contrary to DHS's "procedural requirements and its own rules." Compl. ¶ *80; *see also Narambatla*, 770 F. Supp. 3d at 1268 n.4 (concluding the same about undeveloped notice claim in similar case brought by Nalwade's attorney). Nalwade does not identify in his complaint any procedural requirements or rules that DHS has allegedly violated, nor does he advance any such claim in his brief. *See* Pl.'s Opp'n 10–19.

### B.    Failure to State a Claim

If an alien's H-1B visa is revoked, § 1184(g)(3) separately calls for the revocation of his cap-exempt status if the "alien . . . is found to have been issued such visa . . . by fraud or willfully misrepresenting a material fact."  8 U.S.C. § 1184(g)(3).  Nalwade contends that DHS may revoke an alien's cap-exempt status pursuant to § 1184(g)(3) only if the alien *himself* commits fraud or makes a material misrepresentation.  In other words, he argues that fraud perpetrated by an alien's employer during the H-1B registration and petition process does not trigger § 1184(g)(3).

The Court disagrees.  As other courts have held, including one in this district, *see Y&N Bldg. Supply*, 2025 WL 2801940, at *11, revocation under § 1184(g)(3) is not limited to instances in which an alien personally commits fraud.[6]  By its plain text, context, and structure, the revocation provision extends to fraud and misrepresentations committed by petitioning employers.

To begin, the language of the provision does not support Nalwade's narrow reading.  It does not specify the actor whose fraud or misrepresentation triggers revocation of the alien's cap-exempt status.  "[N]owhere does it specify that a cap number can *only* be revoked through an individual's own fraud or misrepresentation."  *Manney v. DHS*, 735 F. Supp. 3d 590, 600 (E.D. Pa. 2024) ("[The plaintiff's] construction requires [the court] to read a word into the statute."); *Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." (citation modified)).  Instead, the statutory provision uses the passive voice: an alien who "is found *to have been issued*" a visa "by fraud or willfully

---

[6] The Court has found multiple decisions agreeing with this Court's interpretation of § 1184(g)(3) but none adopting Nalwade's preferred reading.  *See, e.g.*, *Potnuru v. DHS*, No. 23-cv-02423, 2026 WL 25122, at *3–5 (D. Ariz. Jan. 5, 2026); *Narambatla*, 770 F.Supp.3d at 1268–69; *Kothapally*, 2025 WL 2810005, at *5–8; *Radhakrishnan v. DHS*, No. 24-cv-00444, 2025 WL 2652481, at *5–8 (D. Utah Sept. 15, 2025); *Manney*, 735 F. Supp. 3d at 600–01; *Parcha v. Cuccinelli*, No. 20-cv-015, 2020 WL 607103, at *9–10 (E.D. Tex. Feb. 7, 2020).

misrepresenting a material fact."  This use of the passive voice broadens the scope of the provision to include fraud committed by any actor who participates in the process of obtaining the alien's visa.  *See Kothapally v. DHS*, No. 24-cv-00741, 2025 WL 2810005, at *6 (N.D. Ala. Sept. 30, 2025) ("The passive formulation of the statute with the phrases 'who was issued' or 'is found to have been issued' suggests that the statute applies to fraud by more than just the foreign national mentioned in the statute.  Passive voice shifts the statute's structure such that the foreign national receives the action, in this case, a visa or nonimmigrant status procured by fraud or willful misrepresentation, rather than performing the action.").  Consistent with other courts, the Court concludes that the statute's plain meaning provides for revocation of an alien's cap-exempt status when the petitioning employer commits fraud during the H-1B application process.  *See Y&N Bldg. Supply*, 2025 WL 2801940, at *11 (concluding the same).

The statutory context and structure confirm this reading.  Because the H-1B registration and petition process is conducted almost exclusively by the alien's employer, *see supra* at 1–3, there is little, if any, opportunity for an alien to commit fraud during the process.  Nalwade's narrow reading of § 1184(g)(3) would render the provision virtually meaningless, granting the alien a "windfall" by allowing him to retain a cap-exempt status that was obtained through fraud. *Manney*, 735 F. Supp. 3d at 600–01.  As another court observed, "it would defy common sense to interpret the statute to allow the beneficiary to retain a cap number merely because the fraud or misrepresentation came from the employer petitioner" and not the alien himself.  *Y&N Bldg. Supply*, 2025 WL 2801940, at *11.  "A visa or nonimmigrant status based on fraud—regardless of which party committed fraud—still constitutes a visa 'issued' or status 'otherwise provided . . . by fraud.'"  *Id.* (quoting 8 U.S.C. § 1184(g)(3)).  In sum, like its plain text, § 1184(g)(3)'s "context and design" confirm that the provision penalizes fraud during the H-1B application process,

whether committed by the alien himself or by his petitioning employer. *Radhakrishnan v. DHS*, No. 24-cv-00444, 2025 WL 2652481, at \*7 (D. Utah Sept. 15, 2025).

Nalwade's argument that § 1184(g)(3) should be read like 8 U.S.C. § 1182(a)(6)(C)(i) is similarly unpersuasive. Section 1182(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). Nalwade contends that Congress "incorporat[ed] the language" of § 1182(a)(6)(C)(i) into § 1184(g)(3) by including the phrase "by fraud or willfully misrepresenting." Pl.'s Opp'n 11. Consequently, he argues that because § 1182(a)(6)(C)(i) applies only when the alien himself commits fraud, the same must be true of § 1184(g)(3). *See id.* Nalwade's argument, however, ignores the fact that Congress used materially different language to convey different meaning in the two provisions.

Unlike § 1184(g)(3), § 1182(a)(6)(C)(i) specifies that an alien must commit the fraud. Drafted in the active voice, it provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure [a visa]" can be deemed inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). Section 1184(g)(3), by contrast, uses the passive voice and does not specify an actor. These textual differences suggest that Congress used different language in the two provisions to mean different things. *See Radhakrishnan*, 2025 WL 2652481, at \*7 ("[I]f Congress intended § 1184(g)(3) to apply only to a foreign national's misconduct, it would have said so—like it did in § 1182(a)(6)(C)(i)."); *Kothapally*, 2025 WL 2810005, at \*6 ("[Section] 1182 demonstrates that Congress knows how to limit a statute's scope to foreign nationals' acts when Congress wishes to restrict a provision's application."); *see also Stanley v. City of Sanford*, 606 U.S. 46, 53 (2025)

("That Congress used different language in these two provisions strongly suggests that it meant for them to work differently.").

This difference in language makes sense given that a failure to comply with the two provisions leads to meaningfully different consequences. A finding of fraud under § 1182(a)(6)(C)(i) renders an alien inadmissible, meaning that he "cannot apply for a visa or otherwise be admitted into the United States." *Narambatla v. DHS*, 770 F. Supp. 3d 1264, 1269 (W.D. Wash. 2025). By contrast, a finding of fraud under § 1184(g)(3) imposes a less harsh consequence: An alien can lose his H-1B visa and cap-exempt status, but he is still permitted to reenter the H-1B lottery and "seek new employment" in the United States.[7] *Manney*, 735 F. Supp. 3d at 601. This difference in consequences further supports the Court's conclusion that Congress intentionally used different language in the two provisions, reserving the severe penalty of inadmissibility for situations in which an alien himself commits the fraud. *See Narambatla*, 770 F. Supp. 3d at 1269 ("The considerable difference in the consequences for violating Section 1182(a)(6)(C)(i) as compared to Section 1184(g)(3) 'undermines Plaintiffs' position because it shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless.'" (quoting *Manney*, 735 F. Supp. 3d at 600)).

---

[7] For the first time in his opposition, Nalwade argues that the revocation of an alien's cap-exempt status under § 1184(g)(3) is a "penalty" that violates the Eighth Amendment. Pl.'s Opp'n 14. Nalwade does not raise this argument in his complaint, and the only two cases he cites in support are inapplicable here, as they concern monetary penalties and the Excessive Fines Clause of the Eighth Amendment. *See id.* (citing *United States v. Schwarzbaum*, 114 F.4th 1319 (11th Cir. 2024), *opinion vacated and superseded on reh'g*, 127 F.4th 259 (11th Cir. 2025); *Johnson v. Becerra*, 674 F. Supp. 3d 949 (D. Mont. 2023)). There are no monetary penalties at issue in this case, and, like another court, this Court will not consider this underdeveloped argument. *See Narambatla*, 770 F. at 1270 (noting, in a similar case brought by Nalwade's attorney, that the plaintiffs raise a cursory Eighth Amendment argument for the first time in their brief that relies on the same two excessive fines opinions).

A plain reading of § 1184(g)(3), as confirmed by its context and structure—including the text of § 1182(a)(6)(C)(i), its statutory neighbor—leads to only one conclusion: The revocation provision in § 1184(g)(3) applies to instances in which either an alien or his employer commit fraud.  Because Nalwade's interpretation of § 1184(g)(3) is incorrect, he fails to state a claim for relief under § 706 of the APA.

## CONCLUSION

For the foregoing reasons, the Court grants DHS's Motion to Dismiss, Dkt. 9, and dismisses this action without prejudice.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 27, 2026

14